# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02339-LTB-NYW

STEVE OGBURN,

    Plaintiff,

v.

AMERICAN NATIONAL PROPERTY & CASUALTY COMPANY,

    Defendant.

## ORDER

Magistrate Judge Nina Y. Wang

    This civil action is before the court on Defendant American National Property & Casualty Company's ("Defendant") Motion to Meet *Ex Parte* With Certain Medical Providers, filed on August 19, 2015 [#45] ("Motion to Meet *Ex Parte*"), and Defendant's Motion to Compel Neuropsychology Files, filed on August 20, 2015 [#47] ("Motion to Compel Neuropsychology Files") (collectively, the "Motions").[1]  Pursuant to the Order Referring Case dated October 21, 2014 [#22], the February 10, 2015 Reassignment [#29], and the August 20, 2015 and August 21, 2015 Memoranda [#46, #48], the Motions are before this Magistrate Judge.  The court has reviewed the papers and exhibits submitted by both Parties, considered the applicable case law, is sufficiently advised of the premises, and finds that oral argument would not materially assist the court's disposition of the Motions.   For the reasons stated below, the Motion to Meet *Ex Parte* is GRANTED IN PART and DENIED IN PART.  The Motion to Compel Neuropsychology files is GRANTED.

---

[1] This Order refers to the ECF docket number for documents, and the page number as assigned by the court's ECF system for consistency and ease of reference.

## BACKGROUND

On August 22, 2015, Defendant American National Property & Casualty Company ("Defendant") removed this action from the County of Boulder District Court. [#1]. Plaintiff Steve Ogburn's ("Plaintiff" or "Mr. Ogburn") Complaint asserts a single claim for breach of contract against the Defendant for failure to pay uninsured motorist coverage allegedly due under Plaintiff's insurance policy with the Defendant, arising from a September 29, 2011 car accident. [#3 at ¶¶ 3, 16-27]. Plaintiff alleges that he suffered "emotional, and/or psychological injuries, and/or disabilities, and/or economic losses and injuries which injuries, damages, and losses are permanent in nature and which losses Plaintiff has suffered in the past and will suffer in the future." [*Id.* at ¶ 13]. Plaintiff has subsequently represented that his injuries include "mental and cognitive injuries from concussion and traumatic brain injury." [#34 at 2].

The following reflects the sequence of care received by Mr. Ogburn, as set out in Defendant's instant Motion to Meet *Ex Parte*, which is not refuted by Plaintiff's Response. *Compare* [#45] *with* [#53]. Soon after the September 29, 2011 accident, Mr. Ogburn was referred to neurologist Dr. William Wagner for treatment. [#45 at 5]. Between October of 2011 and December of 2012, Mr. Ogburn was seen by Dr. Wagner on at least eight occasions. [*Id.*]. The medical records reflect that Mr. Ogburn was treated by Dr. Wagner for medical conditions potentially arising from the automobile accident at issue in this litigation, including migraines and post-concussive syndrome. [*Id.*]. Plaintiff has disclosed Dr. Wagner as a non-retained treating physician expert who may opine as to matters addressed in the relevant treatment records, and as to the reasonableness of the costs incurred by Plaintiff in seeking and obtaining treatment related to the car accident. [*Id.*].

On February 12, 2013, Plaintiff first visited Dr. Alexander Feldman. [*Id.*]. Between February and August of 2013, Plaintiff visited Dr. Feldman on at least seven other occasions. [*Id.*]. The relevant treatment records indicate that Mr. Ogburn sought treatment from Dr. Feldman for medical conditions potentially arising from the September 29, 2011 automobile accident, including post-concussive syndrome, headaches, and dizziness. [*Id.* at 5-6]. Dr. Feldman has also been designated by Plaintiff as a non-retained expert. [*Id.* at 6].

On July 23, 2015, Defendant propounded a discovery request on Plaintiff calling for production of "copies of all neuropsychological test materials, including raw data, handwritten notes, technician notes, and all related documents, for each and every neuropsychological evaluation of Plaintiff, Steve Ogburn, including but not limited to those involving Thomas Wodushek, Ph.D. and Mark Zacharewicz, M.D." [#47 at 2]. Plaintiff has to date declined to produce such materials to Defendant's counsel, and has maintained that "licensed psychologists/neuropsychologist are ethically bound to produce this information only to other licensed psychologists/neuropsychologist." [*Id.* at 2-3].

Defendant's Motion to Meet *Ex Parte* seeks an order from this court permitting Defendant's counsel to meet *ex parte* with Dr. Wagner and Dr. Feldman. [#45 at 6-7]. Defendant's Motion to Compel Neuropsychology Files seeks production of relevant neuropsychological test materials in Plaintiff's possession, custody, and control, pursuant to the terms of an appropriately tailored protective order pursuant to Fed. R. Civ. P. Rule 26(c)(1)(G). [#44 at 4-7].

## ANALYSIS

### I.  Standard of Review

The general test of discoverability is whether the information sought by a discovery request is "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). This is a broad standard meant to allow the parties to discover the information necessary to prove or disprove their cases. *Bagher v. Auto-Owners Insurance Company*, No. 12–cv–00980–REB–KLM, 2013 WL 5417127, at *5 (D. Colo. Sept. 26, 2013). Upon a showing of "good cause" by the proponent of discovery, an even broader standard of "any matter relevant to the subject matter involved in the action" may be applied. *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1188 (10th Cir. 2009).

The proper scope of discovery is bounded by the principles of proportionality. Fed. R. Civ. P. 26(b)(2)(C); *see also Qwest Commc'ns Int'l v. Worldquest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003). Indeed, Rule 26(b)(2)(C) allows a court to limit discovery on motion or on its own if it determines that: (1) the discovery sought is unreasonably cumulative or duplicative, or may be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(a)(2)(C). Fed. R. Civ. P. Rule 26(c)(1)(G) provides that a court may also enter a protective order as to materials

containing "a trade secret or other confidential research, development, or commercial information."

In a civil action based upon a state cause of action, state law controls the determination of privileges. *White v. Am. Airlines, Inc.*, 915 F.2d 1414, 1424 (10th Cir. 1990). Under Colorado law, communications between physicians and their patients are generally privileged. "Protecting these communications from disclosure promotes 'effective diagnosis and treatment of illness by protecting the patient from the embarrassment and humiliation' that could result from divulging her medical information." *Reutter v. Weber*, 179 P.3d 977, 980 (Colo. 2007) (quoting *Alcon v. Spicer*, 113 P.3d 735, 738 (Colo. 2005)). Plaintiffs bear the burden of establishing applicability of the physician-patient privilege, *Alcon*, 113 P.3d at 739, and "[i]ssues arising in the course of pretrial discovery are committed to the discretion of the trial court." *Reutter*, 179 P.3d at 984 (citation omitted).

"When a patient initiates a civil action and by alleging a physical or mental condition as the basis for a claim of damages injects that issue into the case, the patient thereby impliedly waives his or her physician-patient privilege with respect to that medical condition." *Samms v. District Court*, 908 P.2d 520, 524 (Colo. 1995) (citing *Clark v. District Court*, 668 P.2d 3, 8 (Colo. 1983)). The trial court has the authority to allow counsel for a party to conduct informal interviews with an opposing party's treating physicians if "the discussions are limited to relevant non-privileged information and provided further that [the opposing party] must be given reasonable notice of such interviews to permit her attorney to attend or to otherwise ensure that privileged information is not discussed." *Samms*, 908 P.2d at 529-30. Courts may permit parties to conduct such interviews *ex parte*, without requiring that the plaintiff be permitted to attend,

where the "non-party medical providers do not possess residually privileged information [*i.e.*, information as to which privilege has not been waived, by statute or otherwise]." *Reutter*, 179 P.3d at 982. In considering whether such *ex parte* interviews may be permitted, the trial court should determine the risk of disclosure of residually privileged information by "taking into account not only the evidence offered by the plaintiff-patient, but also the circumstances of the plaintiff-patient's treatment and the likelihood that those circumstances could give rise to residually privileged information." *Id.*

## II.   Application to Motion to Meet *Ex Parte*

Defendant argues that Plaintiff's allegations that he suffered "emotional, and/or psychological injuries, and/or disabilities" [#3 at ¶ 13], which have been represented to include "mental and cognitive injuries from concussion and traumatic brain injury," [#34 at 2], have placed Plaintiff's mental and cognitive condition at issue in this litigation. [#45 at 6-7]. Defendant also argues that because the treatment records suggest Dr. Wagner and Dr. Feldman's care was focused on Plaintiff's neurological condition subsequent to the automobile accident, the "the risk of divulgement by them of [privileged medical] information irrelevant to this civil case is non-existent." [*Id.* at 5-6]. Defendant requests that defense counsel be permitted to interview Dr. Wagner and Dr. Feldman *ex parte*, without Plaintiff or Plaintiff's counsel present, to aid in "in the efficient preparation of this case for trial." [*Id.*]. Defendant cites decisions from courts in the District of Colorado allowing such *ex parte* interviews to proceed in medical malpractice actions, where the courts expressly determined that the risk of disclosure of "residually privileged" information was low or non-existent. [*Id.* at 6] (citing Judge Boland's January 15, 2010 Order [#34] in *Zander v. Craig Hospital et al.*, 1:09-cv-02121-KHV-BNB ("*Zander*"),

allowing for *ex parte* interview of 22 medical providers in medical malpractice action, and Judge Tafoya's January 25, 2013 Order [#41] in *Carter v. Loucks*, 12-cv-01381-WYD-KMT ("*Loucks*"), allowing for *ex parte* interviews in medical malpractice action]).

In opposing Defendants' Motion to Meet *Ex Parte*, Plaintiff does not address Defendant's waiver arguments, but contends that *Zander* and *Loucks* are distinguishable from the instant case because *Zander* and *Loucks* involved medical malpractice claims where interviews were sought pertaining to the underlying course of care at issue in the litigation. [#53 at 2-3]. Plaintiff also argues that the risk of disclosure of residually privileged information if Defendant's counsel is permitted to interview Dr. Wagner and Dr. Feldman *ex parte* is significant because information pertaining to Mr. Ogburn's "overall health and medical history" was shared during the course of Mr. Ogburn's treatments with Dr. Wagner and Dr. Feldman. [*Id.* at 4].

As the Colorado Supreme Court's analysis of "at issue" waiver in *Samms v. District Court* drew upon authority outside the medical malpractice context, the court finds that *Samms* and *Reutter* govern this court's privilege determinations. *See Samms*, 908 P.2d 520, 524 (Colo. 1995) (citing *Clark v. District Court*, 668 P.2d 3, 8 (Colo. 1983) (determining scope of "at issue" waiver in wrongful death action against bar and bar manager)). The court also finds that Plaintiff has placed his mental and cognitive condition at issue in this litigation. But on the record before the court, it is unclear what other aspects of Plaintiff's medical history may have been divulged in the course of Plaintiff's treatment by Dr. Wagner and Dr. Feldman. Given the record now before it, the court orders that Defendant's counsel may seek to interview Dr. Wagner and Dr. Feldman regarding Plaintiff's mental and cognitive condition, but Plaintiff must be provided advance notice, and the opportunity to either be present, or for his counsel to be present, during

any such interview in order to guard against disclosure of any residually privileged information. The court is not persuaded that *ex parte* interviews of Dr. Wagner and Dr. Feldman, without Plaintiff or Plaintiff's counsel present, present any efficiencies for preparation of this case for trial.

### III.     Application to Motion to Compel Neuropsychology Files

On July 23, 2015, Defendant propounded a discovery request on Plaintiff calling for production of "copies of all neuropsychological test materials, including raw data, handwritten notes, technician notes, and all related documents, for each and every neuropsychological evaluation of Plaintiff, Steve Ogburn, including but not limited to those involving Thomas Wodushek, Ph.D. and Mark Zacharewicz, M.D." [#47 at 2]. Plaintiff objected on the purported ground that "licensed psychologists/neuropsychologist are ethically bound to produce this information only to other licensed psychologists/neuropsychologist." [*Id.* at 2-3]. In opposing Defendant's Motion to Compel Neuropsychology Files, Plaintiff does not argue that these materials are not relevant to the claims and defenses at issue in this action, or are shielded from production by any potentially applicable privilege. [#54 at 3-6]. Plaintiff instead argues that the materials are not in Plaintiff's possession or control, based on the contention that the ethical and/or copyright obligations of the mental health professionals responsible for the relevant examinations preclude release to anyone other than qualified licensed psychologists. [*Id.* at 5-6]. However, this court has previously recognized that production of such materials to a party's counsel pursuant to an appropriately tailored protective order obviates any such contractual, ethical or trade secret concerns. *Frazier v. Board of County Com'rs of County of Arapahoe*, No. 08–cv–02730–WYD–BNB, 2010 WL 447785, at *4 (Feb. 3, 2010). Defendant has submitted a

proposed Protective Order for the court's review, [#55-1], but it is unclear what position Plaintiff takes with respect to the proposed Protective Order.

Plaintiff is ordered to produce documents in Plaintiff's possession, custody, or control (including documents that Plaintiff may obtain on demand pursuant to the terms of this Order and the Protective Order) responsive to Defendant's July 23, 2015 discovery request seeking copies of neuropsychological test materials arising out of any neuropsychological evaluation of Plaintiff, no later than October 5, 2015, for disclosure to Defendant's attorneys and experts alone.  To the extent that either Party seeks any additional limitations to disclosure, or a more robust Protective Order, the Parties are directed to meet and confer pursuant to D.C.COLO.LCivR 7.1(A), and jointly submit a proposed Protective Order for the court's consideration no later than October 5, 2015.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED:**

(1)   Defendant's Motion to Meet *Ex Parte* [#45] is GRANTED IN PART and DENIED IN PART;

(2)   Defendant's counsel may seek to informally interview Dr. Wagner and Dr. Feldman concerning Plaintiff's mental and cognitive condition, but must provide notice to Plaintiff, and an opportunity for Plaintiff or Plaintiff's counsel to be present during any such interview;

(3)   Defendant's Motion to Compel Neuropsychology Files [#47] is GRANTED;

(4)   Plaintiff shall produce all documents in his possession, custody, or control responsive to Defendant's July 23, 2015 request for neuropsychological test

materials, including documents that Plaintiff may obtain on demand from the mental health professionals responsible for the relevant testing, no later than **October 5, 2015**, for disclosure to Defendant's attorneys and experts. To the extent that either Party seeks additional limitations to disclosure, or a more robust Protective Order, the Parties are directed to meet and confer and jointly submit a proposed Protective Order for the court's consideration no later than October 5, 2015.

DATED: September 30, 2015                    BY THE COURT:

                                             s/ Nina Y. Wang
                                             United States Magistrate Judge